

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

November 22, 2023

**Via ECF**
The Honorable Judge Gabriel W. Gorenstein
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: **Lobo Puerto v. Happy Life Home Health Agency, Inc., et al.**
    **23-CV-4915 (GWG)**

Dear Judge Gorenstein:

Our office represents Claudio Lobo Puerto ("Plaintiff") and we submit this motion jointly with counsel for Happy Life Home Health Agency, Inc., Janus Homecare Agency, Inc. and Michael Pagan ("Defendants") requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement") were reached following a Settlement Conference before Your Honor on September 19, 2023. A fully executed copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.    The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

    a. **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $27,500.00.

### b. Plaintiff's Position

Plaintiff commenced this lawsuit alleging that she was not paid proper overtime wages when required to work in excess of 40 hours per week in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL").

Plaintiff alleged that he was employed by Defendants as a home attendant from in or around January 2022 until in or around January 2023. During this period, Plaintiff alleged thats he regularly worked approximately fifty-eight (58) hours per week but that she was paid a flat hourly rate of $20.00 per hour. Plaintiff alleged she was not paid time-and-a-half for her overtime hours.

In advance of the Settlement Conference, the parties exchanged relevant information and documentation regarding Plaintiff's allegations. Defendants provided information and documentation pertaining to the dates of Plaintiff's employment, the number of hours worked by Plaintiff and pay received by Plaintiff. The parties had factual disputes particularly over the number of hours worked by Plaintiff each week.

Plaintiff alleged approximately $30,000.00 in unpaid overtime wages (not including liquidated damages), however, Defendants' records indicated approximately $4,442.75 in unpaid overtime wages.

Although Plaintiff was confident that she could prevail on all of her claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture early in the litigation process avoids the inherent risks and costs of litigation and allows Plaintiff to recover a sum certain in the near future as opposed to the uncertainty of a trial at a much later date in time.

### c. Defendants' Position

Defendants acknowledge that there was an error which led to Plaintiff accidentally being paid her straight time rate for some overtime hours. However, Defendants dispute all claims regarding time worked outside of Plaintiff's designated start and end times. All of Defendants' employees are specifically told that they must clock in and clock out exactly when their shifts begin and end and that any additional work time is expressly prohibited. This is explained to each employee in person and in writing, and each employee signs documentation verifying that they have read the policies and procedures and understand them. Each recipient home care has a specific amount of time that their insurance qualifies them to receive, and Defendants provide that amount exactly. Any additional time provided by a home attendant would subject Janus to increased exposure, so that is why additional time is expressly prohibited.

In June 2023, Defendants received a letter from Plaintiff's counsel alleging that it had underpaid Ms. Puerto. Thereafter Defendants consulted with their payroll provider, ADP Workforce Now, and ascertained that Plaintiff was correct in that she had been paid overtime hours at her straight hour rate. Defendants then calculated the shortfall that was due to Plaintiff and mailed her a letter with a breakdown of the week by week pay shortfall, together with her pay stubs and copies of the checks she received, and a payroll check covering the shortfall in the gross amount of $4,442.75. After typical withholdings, the net payment to Ms. Puerto was $2,675.73.

Defendants deny Plaintiff's claims, but have agreed to settle this matter due to the risks and expenses associated with trial.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $27,500.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved following a Settlement Conference with the Court with all parties present. The parties had genuine, bona fide disputes over the Plaintiff's position and duties, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

## II.    The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 7 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $27,500.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $17,596.00 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,106.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $704.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($26,394.00), or $8,798.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $9,904.00.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $27,500.00
**Attorneys' Expenses:** $1,106.00
**Net Settlement Amount:** $26,394.00 ($27,500.00 - $1,106.00)
**Requested Attorneys' Fees:** $8,798.00 ($26,394.00 / 3)
**Total payable to Attorneys:** $9,904.00 ($8,798.00 + $1,106.00)
**Total payable to Plaintiff:** $17,596.00 ($27,500.00 - $9,904.00)

#### c. Attorney Fee Arrangement, Retainer Agreement, and Lodestar Calculation of Attorneys' Fees

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016). A copy of the retainer agreement is attached hereto as **Exhibit 2**.

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts.

Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff. Additionally, as a check on this fee request, attached hereto as **Exhibit 3** is information as to the actual attorneys' fees expended, including Plaintiff's counsel's contemporaneous time records, qualifications, and lodestar calculation of fees.

### IV.     Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.